UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CHASKE ROCKBOY, | 4:24-CV-04093-ECS |
| Plaintiff, | |
| vs. | OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JUDICIAL NOTICE |
| CHARLES MIX COUNTY; RANDY THALER, Officially and Individually; DERIK ROLSTON, Officially and Individually; JAN BUDAVICH, Officially and Individually, | |
| Defendants. | |

Charles Mix County Sheriff Randy Thaler and Deputies Derek Rolston and Jan Budavich arrested Chaske Rockboy—an enrolled member of the Yankton Sioux Tribe—on a public street within the town of Lake Andes, South Dakota, for threatening a judicial officer in violation of SDCL § 22-11-15, a class five felony. Rockboy later pleaded guilty. Rockboy now sues Charles Mix County, Sheriff Thaler, and Deputies Rolston and Budavich (collectively "Defendants") under 42 U.S.C. § 1983 for violation of his Fourth and Fourteenth Amendment rights because (1) the warrantless arrest occurred in Indian country—outside the territorial jurisdiction of the country sheriff's office—and (2) Defendants used excessive force in executing the arrest. Doc. 20. Rockboy also asserts a negligence claim under state law. Id. The parties filed cross-motions for summary judgment, Docs. 21, 33, and Rockboy filed a motion for judicial notice, Doc. 37. On July 10, 2025, the Court heard oral argument. Doc. 57. For the reasons explained below, the Court grants summary judgment in favor of Defendants. Rockboy's claims for prospective

injunctive and declaratory relief and his state-law negligence claims are dismissed without prejudice.

## I.    Factual Background

### A.    The Threat

On December 2, 2021, at around 11:09 a.m., Rockboy recorded a Facebook live video while driving between Yankton and Vermillion, South Dakota. Doc. 23 ¶¶ 2, 7. In the video, Rockboy threatened the life of the Honorable Bruce Anderson, a South Dakota Circuit Court Judge for South Dakota's First Judicial Circuit:[1]

> Bruce Anderson, you sent me to [expletive] prison, you [expletive] molester. [Expletive] I am going to kill you for raping my [expletive] niece sister you [expletive] [expletive], just know that your day is coming. Warriors, Bruce Anderson look for his [expletive] before I find him. I am intelligently giving you that opportunity, because I told you what I would do to him if I got a hold of him. Public Servants, you know where [expletive] Bruce Anderson lives, or Charles Mix County are you willing to start paying compensation. How much is his dead carcass [expletive] are you willing to work for. Like I said, you don't [expletive] with prayers, I do not control his fate. I am going to tell you now, I have already asked can you commit any acts of violence when you are a pipe carrier, he said no, so I don't want to be a pipe carrier yet.

Id. ¶ 4. Deputy Rolston first learned of the video through a report. Id. ¶ 2. After conducting an online search, Deputy Rolston verified that the video had been posted to Rockboy's Facebook account. Id. ¶ 3. And past dealings with Rockboy allowed Deputy Rolston to confirm that Rockboy was the subject featured in the video. Id.

### B.    The Stop

About three hours after Rockboy had livestreamed his threat against Judge Anderson, Sheriff Thaler and Deputy Rolston observed Rockboy's pickup driving west into Lake Andes.

---

[1] Judge Anderson and Rockboy have a history. Judge Anderson presided over Rockboy's 2017 conviction for Aggravated Assault–Domestic Abuse  Rockboy was found guilty of stabbing his mother in the head with a pen Judge Anderson sentenced him to eight years (six suspended) in the South Dakota State Penitentiary. Doc  23 ¶ 6 (citing South Dakota v  Rockboy, 11 CRI. 17-000036 (S.D. First Jud. Cir.)).

Id. ¶ 8. The two officers tried to initiate a traffic stop, but Rockboy would not stop. Id. ¶ 9. Rockboy continued driving, leading Sheriff Thaler and Deputy Rolston several blocks north on Third Avenue before turning east on School Street. Id. Deputy Budavich ultimately ended the pursuit by cutting Rockboy off at the intersection of School Street and North Fourth Avenue. Id. ¶ 10. Rockboy's truck came to a stop on the south side of School Street, just west of the intersection of School Street and North Fourth Avenue. Id.

Once Rockboy's truck came to a stop, Sheriff Thaler and Deputy Rolston approached it on foot. Id. ¶ 24. Deputy Budavich also exited her vehicle and stood in front of Rockboy's truck. Id. Sheriff Thaler instructed Rockboy to exit his vehicle and that he was under arrest. Id. Ignoring Sheriff Thaler's instruction, Rockboy instead inquired into the reason for the stop. Id. ¶ 25. Sheriff Thaler informed Rockboy that he had recorded and shared a video of himself threatening a judge's life. Id.

Not long into the traffic stop, Yankton Sioux Tribal Police Officer Cameron Fields arrived on scene. Id. ¶ 26. He too instructed Rockboy to exit his vehicle and comply with Sheriff's Thaler's commands. Id. ¶ 27. Despite Officer Field's presence, Rockboy requested the presence of a more senior tribal police officer and argued that the Charles Mix County Sheriff's Office did not have jurisdiction to arrest him because he was in Indian country. Id. ¶¶ 28–29. Officer Fields informed Rockboy that he "was on state land" and that his commanding officer was aware of his presence on scene. Id. ¶ 29.

Sheriff Thaler made repeated attempts to effectuate Rockboy's arrest without any use of force. Id. ¶ 30. But Rockboy continued to disregard Sheriff Thaler's requests. Id. ¶ 31. So, after more than fifteen minutes, Deputy Rolston used Officer Fields's baton to break open Rockboy's passenger-side window. Id. ¶ 32. Once broken, Deputy Rolston reached in and

unlocked Rockboy's truck. Id. ¶ 33. Sheriff Thaler then opened Rockboy's driver side door and, once again, instructed Rockboy to exit the vehicle, but he continued to not comply. Id. ¶ 34. After an additional four minutes of continued resistance, Sheriff Thaler, Deputy Budavich, and Tribal Officer Fields pulled Rockboy from the open car door. Id. ¶ 35. As he was being pulled from the pickup, Rockboy screamed that he was being raped and the officers were trying kill him. Id. ¶ 34.

Once Rockboy was out of the vehicle, Sheriff Thaler handcuffed Rockboy's arms behind his back. Id. ¶ 36. Lying face down in the street and complaining of a prior back injury, Rockboy demanded that the officers not touch or move him. Id. ¶ 37. Sheriff Thaler asked if Rockboy wanted to be moved into a more comfortable position, but Rockboy insisted that he did not want to be touched. Id. ¶ 39. The officers also called for an ambulance at Rockboy's behest. Id. ¶ 38. When the ambulance arrived, Deputy Rolston removed Rockboy's handcuffs so the EMTs could transfer Rockboy to a backboard. Id. ¶ 40. Deputy Rolston and Sheriff Thaler then helped the EMTs load Rockboy into the ambulance to take him to the hospital. Id. ¶¶ 41–42.

### C.    Post-Arrest

While Rockboy was at the hospital, the Charles Mix County Sheriff's Office obtained a warrant for a blood sample from Rockboy to test for drugs. Id. ¶ 42; Doc. 24 ¶ 7; Doc. 24-5. Rockboy admitted that he would test positive for methamphetamine. Doc. 23 ¶ 42. On April 5, 2022, Rockboy pleaded guilty to threatening or intimidating a judicial officer in violation of SDCL § 22-11-15, a class five felony under South Dakota state law. Id. ¶ 43.

Rockboy then brought this lawsuit under 42 U.S.C. § 1983, alleging that Defendants violated his Fourth and Fourteenth Amendment rights to due process and to be free from unreasonable searches and seizures. Docs. 1, 20. Rockboy argues (1) his arrest took place in

Indian country, (2) Defendants did not have probable cause that he committed a crime in Charles

Mix County, (3) Defendants used excessive force in effectuating his arrest, and (4) Defendants

acted negligently. Doc. 20. The parties have filed cross-motions for summary judgment, which

the Court takes up below. Docs. 21, 33.

## II.    Summary Judgment Standard

A court may grant summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); see also Main v. Ozark Health, Inc., 959 F.3d 319, 323 (8th Cir. 2020). If the

movant meets its burden, the nonmoving party must establish the existence of a genuinely

disputed material fact by either "citing to particular parts of materials in the record" or "showing

that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P.

56(c)(1)(A)–(B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th

Cir. 2012). "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Id.

When ruling on a summary judgment motion, courts must view the facts and inferences

fairly drawn from them in a light most favorable to the nonmoving party. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold,

Inc., 369 U.S. 654, 655 (1962)). But courts do not "resort to speculation." Baker v. Silver Oak

Senior Living Mgmt. Co., 581 F.3d 684, 687 (8th Cir. 2009) (quoting Roberts v. Park Nicollet

Health Servs., 528 F.3d 1123, 1126 (8th Cir. 2008)). The judge's function during summary

judgment is not "to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

## III.    Qualified Immunity Standard

Sheriff Thaler and Deputies Rolston and Budavich argue that qualified immunity shields them from liability in their individual capacities. Doc. 22 at 15–23. Rockboy claims that they are not entitled to qualified immunity on the merits of the claims and because qualified immunity is unconstitutional. Doc. 46 at 26–30.

This Court first addresses Rockboy's argument that qualified immunity is unconstitutional. Rockboy quotes a Southern District of Mississippi case in which the court stated, "qualified immunity is an unconstitutional error." <u>Id.</u> at 26 (quoting <u>Green v. Thomas</u>, 734 F. Supp. 3d 532, 540 (S.D. Miss. 2024), <u>rev'd in part</u>, 129 F.4th 877 (5th Cir. 2025)). Rockboy also quotes an Eastern District of Virginia case that stated, "many things about the judge-made doctrine of qualified immunity . . . are unjust, . . . the judge made doctrine has got to go." <u>Id.</u> (second alteration in original) (quoting <u>Fowler v. Stolle</u>, 760 F. Supp. 3d 416, 432 n.9 (E.D. Va. 2024)). But as Defendants argue, "[q]ualified immunity is the law of the land," and "[t]his Court is bound to apply it." Doc. 54 at 11. The Supreme Court has not found qualified immunity to be unconstitutional and has instead applied qualified immunity to cases before it. <u>See e.g.</u>, <u>District of Columbia v. Wesby</u>, 583 U.S. 48, 62–65 (2018) (applying qualified immunity). Thus, this Court—like the <u>Fowler</u> court noted—is required to apply qualified immunity. <u>See</u> <u>Fowler</u>, 760 F. Supp. 3d at 432 n.9.

6

Qualified immunity generally protects government officials from liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986))). Its protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (citation modified).

When invoking the defense of qualified immunity at summary judgment, "a defendant official is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation modified). Under this two-pronged inquiry, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Ashcroft, 563 U.S. at 735. A district court may find for the defendant on either prong, but it "may not deny qualified immunity without answering both questions in the plaintiff's favor." See Watson v. Boyd, 2 F.4th 1106, 1112 (8th Cir. 2021) (quoting Walton, 752 F.3d at 1116); Klum v. City of Davenport, 145 F.4th 907, 912 (8th Cir. 2025) (citing Thurairajah v. City of Fort Smith, 925 F.3d 979, 982–83 (8th Cir. 2019)). "As such, a district court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim because to do so could undermine the goal of qualified immunity." Watson, 2 F.4th at 1112 (citation modified).

For the second prong, a right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (citation modified) (quoting Ashcroft, 563 U.S. at 741). The "burden to demonstrate that the law is clearly established" is on the plaintiff. Morgan v. Robinson, 920 F.3d 521, 524 (8th Cir. 2019) (en banc). "The longstanding principle is that clearly established law should not be defined 'at a high level of generality." Id. at 523 (citation modified). Rather, "the clearly established law must be 'particularized' to the facts of the case." White, 580 U.S. at 79 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Morgan, 920 F.3d at 524 (quoting Ashcroft, 563 U.S. at 741).

## IV.   Discussion

### A.   <u>Heck</u> Bar

Under Heck v. Humphrey, claims necessarily implicating the validity of the plaintiff's conviction may not be brought under § 1983, regardless of the relief sought. 512 U.S. 477, 486–87 (1994); see also Preiser v. Rodriquez, 411 U.S. 475 (1973). The Supreme Court held in Heck:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (footnote omitted). The Eighth Circuit has not clarified whether a Heck bar is jurisdictional. See Mitchell v. Kirchmeier, 28 F.4th 888, 895 n.1 (8th Cir. 2022) ("There is some confusion about whether the Heck bar is jurisdictional. . . . To avoid deciding the question

here, we explain why <u>Heck</u> does not apply before considering whether [plaintiff's] claims are subject to dismissal."). Thus, for the sake of completeness, this Court first considers whether <u>Heck</u> bars Rockboy's claims.

Here, both parties argue that <u>Heck</u> does not bar Rockboy's claims because his conviction is separate from his arrest and "an unlawful arrest does not necessarily imply the invalidity of a subsequent conviction." Doc. 59 at 1; Doc. 60 at 2–3. For <u>Heck</u> purposes, the Eighth Circuit has distinguished an arrest from a conviction when a conviction might be sustained on evidence independent from the challenged activity compared to when "the basis for the arrest and for the conviction are one and the same." <u>Gerling v. City of Hermann</u>, 2 F.4th 737, 743 (8th Cir. 2021) (citing <u>Moore v. Sims</u>, 200 F.3d 1170, 1171–72 (8th Cir. 2000) (per curiam)); <u>see also</u> <u>United States v. Crews</u>, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." (citations omitted)); <u>Whitmore v. Harrington</u>, 204 F.3d 784, 784–85 (8th Cir. 2000) (per curiam) ("We conclude the district court erred in dismissing [plaintiff's] unlawful-investigative-stop claim as barred by <u>Heck v. Humphrey</u>. . . . If [plaintiff] were to succeed on this claim, it would not necessarily imply the invalidity of his later drug convictions."); <u>Weddell v. Meierhenry</u>, 636 F.2d 211, 214–15 (8th Cir. 1980) ("[E]ven assuming arguendo that the arrest was illegal, it is well established that an illegal arrest does not void a subsequent conviction." (citations omitted)).

Both parties do not dispute that the conduct underlying Rockboy's conviction did not occur at the same time or location of his arrest. <u>See generally</u> Docs. 59, 60. There is no dispute that the state court had jurisdiction over his criminal case. The only issue is whether the arrest was unconstitutional because of the location and manner of arrest. Rockboy's claims that his arrest was unconstitutional do not implicate the validity of his underlying conviction. This Court

after reviewing the cases the parties cited and after conducting its own research is satisfied that

Heck does not bar Rockboy's claims.  Thus, this Court proceeds with considering the parties'

merit arguments for summary judgment.

### B.    Standing

"[S]tanding is a jurisdictional prerequisite that must be resolved before reaching the

merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007).  Thus,

standing can be raised by the parties or by the court sua sponte. Delorme v. United States, 354

F.3d 810, 815 (8th Cir. 2004).  Standing is claim-specific, Pagán v. Calderón, 448 F.3d 16, 26

(1st Cir. 2006) (citing Allen v. Wright, 468 U.S. 737, 752 (1984)), and "[a] party invoking

federal jurisdiction has the burden of establishing standing 'for each type of relief sought,'"

Missourians for Fiscal Accountability v. Klahr, 830 F.3d 789, 793 (8th Cir. 2016) (quoting

Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).

"Standing requires (1) an injury in fact (2) fairly traceable to the defendant's actions and

(3) likely to be redressed by a favorable decision." Curtis Lumber Co. v. La. Pac. Corp., 618

F.3d 762, 770 (8th Cir. 2010) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61

(1992)).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at

560 (internal citations omitted).  "[T]raceability . . . requires the plaintiff to show a sufficiently

direct causal connection between the challenged action and the identified harm." Crain v. Crain,

72 F.4th 269, 278 (8th Cir. 2023) (alterations in original) (quoting Agred Found. v. U.S. Army

Corps of Eng'rs, 3 F.4th 1069, 1073 (8th Cir. 2021)).  "The redressability inquiry focuses on

whether the *injury* that a plaintiff alleges is likely to be redressed through the litigation." Pharm.

Rsch. & Mfrs. of Am. v. Williams, 64 F.4th 932, 940 (8th Cir. 2023) (citation modified).  To

prove standing, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Mineta, 495 F.3d at 569 (quoting Lujan, 504 U.S. at 561).

### 1.    Claims for Money Damages

On Rockboy's claims for money damages, he has sufficiently shown an injury in fact because he stated under oath that he was subject to what he believes to be an illegal arrest and suffered physical pain and injuries to his back and neck. Doc. 49 ¶¶ 3, 6. Sheriff Thaler and Deputies Rolston and Budavich arrested Rockboy and forcibly removed him from his vehicle. Doc. 23 ¶¶ 24, 34–36. Thus, Rockboy has sufficiently shown traceability from his injuries to Defendants' actions. Rockboy's injuries as alleged against Defendants in their official capacities and Charles Mix County are redressable by money damages because "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Money damages are also available against Sheriff Thaler and Deputies Rolston and Budavich in their individual capacities for personal misconduct. See Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Thus, this Court has standing over Rockboy's claims for money damages against Sheriff Thaler and Deputies Rolston and Budavich in their individual and official capacities and against Charles Mix County.

### 2.    Claims for Injunctive and Declaratory Relief

"[W]here the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing. Rather, [the plaintiff] must show he is suffering an ongoing injury or faces an immediate threat of injury." Frost v. Sioux City, 920 F.3d 1158, 1162 (8th Cir. 2019) (alteration in original) (quoting Dearth v. Holder, 641 F.3d 499, 501 (D.C. Cir. 2011)); see

11

also Webb v. Smith, 936 F.3d 808, 814–15 (8th Cir. 2019). "[I]t is the plaintiff's burden to establish standing by demonstrating that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the threatened injury [is] certainly impending." Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc., 528 U.S. 167, 190 (2000) (second alteration in original) (citation and internal quotation omitted).

A landmark case on standing for injunctive relief is City of Los Angeles v. Lyons, 461 U.S. 95 (1983). In Lyons, the plaintiff sued a city and four of its police officers because the officers subjected him to a chokehold without provocation or justification. Id. at 97. The plaintiff sought injunctive relief preventing the use of chokeholds except in situations where the chokehold victim appears to threaten immediate use of deadly force. Id. at 98. The Court noted that in order for plaintiff to establish an actual case or controversy for injunctive relief he

> would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

Id. at 105–06. The Court noted that although plaintiff's complaint alleged the city authorized the use of chokeholds when deadly force was not threatened, "it did not indicate why [plaintiff] might be realistically threatened by police officers who acted within the strictures of the City's policy" because, for example, if the policy limited chokehold to counter a suspect's resistance to arrest or attempt to escape, the future threat "would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation." Id. at 106. Thus, the Court found that plaintiff lacked standing to seek injunctive relief. Id.

12

This Court first turns to Rockboy's claims for injunctive and declaratory relief related to the alleged use of excessive force. Here, Rockboy alleges that Sheriff Thaler and Deputies Rolston and Budavich engaged in a one-time use of excessive force when they forcibly removed him from his vehicle. Rockboy claims in his Amended Complaint that he "suffered injuries and damages, including irreparable harm for which an immediate threat continues to exist entitling Plaintiff to equitable relief." Doc. 20 ¶ 47. But, akin to <u>Lyons</u>, Rockboy has not alleged more than a mere possibility that he will again have an encounter with Charles Mix County officers and that he would resist arrest or not comply with officers' repeated instructions and requests to get out of his vehicle or that officers would forcibly remove him from his vehicle without provocation. <u>See</u> <u>generally</u> Doc. 20. Rockboy has not alleged any facts indicating more than a past injury. Thus, this Court does not have standing over Rockboy's claims for injunctive and declaratory relief for the allegedly illegal use of excessive force.

This Court next turns to Rockboy's claims for injunctive and declaratory relief related to the allegedly illegal arrest. Rockboy requests that this Court enter relief declaring the town of Lake Andes under the jurisdiction of the Yankton Sioux Tribe and the United States[2] and generally requests prospective declaratory and injunctive relief. <u>Id.</u> at 7. In Defendants' response to Rockboy's motion for summary judgment, they argue that Rockboy lacks standing to pursue declaratory relief—particularly his request for relief declaring Lake Andes under the jurisdiction of the Yankton Sioux Tribe and United States—because he has not shown any present injury. Doc. 41 at 11–12. Rockboy argues that Defendants will continue to unlawfully assert jurisdiction absent an award of declaratory relief because he believes that "it is an official

---

[2] During the hearing, Rockboy clarified that the declaratory relief he requests pronouncing Lake Andes as part of Indian country is prospective relief. Mot. Hr'g 09:22 48–09.23:00, July 10, 2025 (audio).

policy of the Defendant governmental entity to assert criminal jurisdiction over Indians on Indian lands in Lake Andes." Doc. 53 at 25.

Because Rockboy has not alleged he is suffering from an ongoing injury, he must show an immediate threat of injury. In order for an injury to be immediate, Rockboy would either need to show that he will again be arrested by employees of the Charles Mix County Sheriff's Department in the area he believes to be Indian country because he committed a crime, there is evidence sufficient for a warrant or probable cause to believe that he committed a crime, or officers wrongfully arrest him without a warrant or probable cause to believe that he committed a crime. See Hester v. Redwood County, Civ. No. 11-1690 (ADM/JJK), 2012 WL 863804, at *12 (D. Minn. Jan. 24, 2012) (holding in a case seeking injunctive relief to prevent state officials from using overturned refusal to submit to chemical test conviction for sentence enhancement purposes that "[a]ttempting to anticipate whether Plaintiff actually commits a crime in the future and whether the overturned test refusal conviction is used for future sentence-enhancement purposes would lead 'into the area of speculation and conjecture'") (quoting O'Shea v. Littleton, 414 U.S. 488, 497 (1974))). This Court finds that attempting to anticipate whether Rockboy will again be arrested in the specific area he believes to be part of the Yankton Sioux Reservation is too attenuated to show a real and immediate threat and instead requires speculation and conjecture.

Rockboy further argues that "the immediate reality is that Defendants will continue the practice of asserting jurisdiction unlawfully and violating the rights of Indians in Lake Andes, like Plaintiff in this case, unless the requested declaratory relief is granted." Doc. 53 at 25. But

> [a]bsent a sufficient likelihood that he will again be wronged in a similar way, [a plaintiff] is no more entitled to an injunction than any other citizen of [the government entity engaging in allegedly wrongful conduct]; and a federal court

> may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.

Lyons, 461 U.S. at 111. Because Rockboy cannot show a future injury more specific than that of a generally concerned citizen, this Court finds that it lacks standing over Rockboy's claims for injunctive and declaratory relief.

### C.    Illegal Seizure

As to Rockboy's individual capacity claims for illegal seizure, he sues Sheriff Thaler and Deputies Rolston and Budavich for violating his Fourth Amendment right to be free from unreasonable searches and seizures and his Fourteenth Amendment right to substantive and procedural due process. Doc. 20 ¶¶ 43–44. Defendants Thaler, Rolston, and Budavich move for summary judgment because their conduct did not violate Rockboy's Fourth Amendment right because he was not arrested in Indian country, and even if it was Indian country, Supreme Court precedent permitted their actions. Doc. 22 at 5–14. Defendants also claim that they are entitled to qualified immunity. Id. at 15–20. Rockboy disputes that Defendants are entitled to summary judgment and qualified immunity, Doc. 46 at 7–29, and instead, requests that this Court enter partial summary judgment determining that that "the land upon which Plaintiff was arrested by Defendants qualifies as 'Indian country' and falls within the jurisdiction of the Yankton Sioux Tribe and the U.S. government and that Charles Mix County has no jurisdiction to arrest Yankton Sioux Tribal members on such land," Doc. 33 at 1. For the following reason, this Court grants summary judgment in favor of Defendants Thaler, Rolston, and Budavich on their individual capacity claims.

### 1.    Fourth Amendment Claims

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

In Rockboy's Amended Complaint, he alleges that Defendants violated his Fourth Amendment rights because (1) county officers arrested him—an enrolled tribal member of the Yankton Sioux Tribe—in Indian country, (2) Defendants did not obtain a warrant to arrest him, and (3) Defendants did not have probable cause to believe that he committed a crime within their jurisdiction of Charles Mix County. Doc. 20 ¶¶ 1, 31, 33–34, 36. In their brief in support of their motion for summary judgment, Defendants Thaler, Rolston, and Budavich argue that they did not violate the Fourth Amendment because (1) his arrest was on a public street in Lake Andes and was not in Indian county, (2) his arrest was lawful even if it had been in Indian county, (3) the officers had jurisdiction to arrest him anywhere in South Dakota, and (4) the officers had probable cause to arrest him. Doc. 22 at 5–14. Because "[i]n general, courts should think hard, and then think hard again, before turning small cases into large ones," Camreta v. Greene, 563 U.S. 692, 707 (2011), this Court will begin with determining whether, for the purposes of this case, the outcome changes if the land where Rockboy was arrested was Indian country.

Defendants argue that even if the land upon which Rockboy was arrested was Indian country, they are not liable because under Nevada v. Hicks, 533 U.S. 353 (2001), state law enforcement officers can enter the reservation to execute process related to a tribal member's off-reservation violation of state law. Doc. 22 at 10. In Hicks, a tribal member residing on an established reservation was suspected of committing an off-reservation state-law, gross-misdemeanor offense of killing a protected animal. 533 U.S. at 355–56. A state game warden on two separate occasions obtained state and tribal search warrants to search the tribal member's property, and the game warden was accompanied by tribal police during the execution of both searches. Id. at 356. The search did not reveal any evidence of criminal activity, and the tribal

16

member filed a lawsuit in tribal court against the state and tribal actors involved with the search and the issuance of the warrants under § 1983 and tort law. Id. at 356–57. State officials filed an action in federal court seeking declaratory judgment on tribal court jurisdiction over the claims. Id. at 357. The district and appellate court determined that tribal jurisdiction was proper and required defendants to exhaust in tribal court, but the Supreme Court granted certiorari. Id.

When considering whether regulatory jurisdiction over the state officers was "necessary to protect tribal self-government or control internal regulations," the Supreme Court recognized that precedent suggested states had authority to issue process in a reservation against tribal members for off-reservation violations of state law.[3] Id. at 360, 363–64. The Court noted that "'[p]rocess' is defined as 'any means used by a court to acquire or exercise its jurisdiction over a person or over specific property' and is equated in criminal cases with a warrant." Id. at 364 (quoting Process, Black's Law Dictionary (5th ed. 1979)). "The State's interest in execution of process is considerable." Id. Further, the Supreme Court acknowledged that states' jurisdiction on reservations can be stripped by Congress but recognized that "[n]othing in the federal statutory scheme prescribes, or even remotely suggests, that state officers cannot enter a reservation (including Indian-fee land) to investigate or prosecute violations of state law occurring off the reservation."[4] Id. at 365–66.

---

[3] Based on Hicks, the South Dakota Supreme Court has held that a state officer did not violate any jurisdictional principles by entering Indian country to investigate crimes that occurred outside Indian country in South Dakota v. Cummings, 954 N.W.2d 731, 737 (S.D. 2021). Although Cummings is not binding precedent for the federal claims before this Court, this Court takes note of the relevant state court decision.

[4] In ruling on Hicks, the Supreme Court noted that part of the underlying rationale was that "[o]rdinarily, it is now clear, an Indian reservation is considered part of the territory of the State." 533 U.S. at 361–62 (internal citation and quotation omitted). Rockboy does not appear to argue that the Yankton Sioux Reservation is not part of the territory of South Dakota. See generally Doc. 46.

17

### a.    Warrant Requirement

Rockboy argues that <u>Hicks</u> is distinguishable because the game wardens in <u>Hicks</u> "utilized proper processes to obtain search warrants from both state and tribal courts to legally conduct a search."[5]  Doc. 46 at 18; <u>see also id.</u> at 19.  He argues that process is "equated in criminal cases with a warrant," and Defendants did not obtain a warrant before arresting him.  <u>Id.</u> at 17–18 (quoting <u>Hicks</u>, 533 U.S. at 364).  In <u>Hicks</u>, the Supreme Court stated that "'[p]rocess' is defined as 'any means used by a court to acquire or exercise its jurisdiction over a person or over specific property' and is equated in criminal cases with a warrant."  533 U.S. at 364 (quoting <u>Process</u>, Black's Law Dictionary (5th ed. 1979)).  Defendants do not argue that they did not obtain a warrant prior to arresting Rockboy.  Instead, Defendants argue that "the 'process' contemplated by <u>Hicks</u> is equivalent to a warrantless arrest in the criminal context" based on probable cause.  Doc. 54 at 10.  Under the Fourth Amendment, "a warrantless arrest without probable cause violates an individual's constitutional rights."  <u>Ross v. City of Jackson</u>, 897 F.3d 916, 920 (8th Cir. 2018) (quoting <u>Joseph v. Allen</u>, 712 F.3d 1222, 1226 (8th Cir. 2013)).  Although the Supreme Court clearly designated a warrant as a means of process in <u>Hicks</u>, this Court does not read <u>Hicks</u> to mean that a warrant was the *only* means by which a county sheriff can enter Indian country in relation to criminal conduct occurring off the reservation.[6]  533 U.S.

---

[5] During oral argument, Rockboy argued that specifically a tribal warrant was needed  Mot Hr'g 09:20:06–09.20 47, 09.44.09–09:44:40, July 10, 2025 (audio).  This Court does not read <u>Hicks</u> to require a tribal warrant.  Instead, <u>Hicks</u> indicates that obtaining a tribal warrant was "unnecessary" because the search was done in accordance with the state's regulatory authority.  533 U.S. at 362, 366, 372

[6] Notably, Rockboy does not argue the existence of a governing tribal procedure or agreement with state law enforcement officers that would have prohibited the entry of state law enforcement officers onto reservation land under the scenario presented in this case  Such a procedure or agreement could potentially be significant in this Court's analysis  This Court recognizes that a state officer's investigative authority in Indian country necessarily is limited by tribal sovereignty and "the right of reservation Indians to make their own laws and be ruled by them." <u>Williams v  Lee</u>, 358 U S  217, 220 (1959).  Here, however, Rockboy presents no such evidence or argument, and the Court decides the pending issues only on the record before it  The Court notes that in the record before it, a tribal officer assisted in the arrest and removal of Rockboy from his vehicle and instructed Rockboy that he was on state land

at 363–64; see New Mexico v. Harrison, 238 P.3d 869, 878 (N.M. 2010) ("Although the Court's analysis in Hicks focused on the execution of a state search warrant, the term 'process' is not limited to warrants or summons, but, rather, encompasses all state criminal process or procedure." (citation omitted)). This Court is not aware of—and Rockboy does not cite—any case law that has held differently.

Rockboy also argues that Defendants had time to obtain a warrant, but "[i]nstead, they spent hours staking out the town of Lake Andes, seeking to locate and arrest Plaintiff . . . without seeking or acquiring jurisdiction through the warrant process in any court." Doc. 46 at 19 (citing Doc. 43 at ¶¶ 8–9). Although a warrant may be preferred, this Court is not aware of any constitutional authority requiring a warrant when there is probable cause. See United States v. Johnson, No. 4:10CR253 CEJ (FRB), 2011 U.S. Dist. LEXIS 154810, at *7 (E.D. Mo. Dec. 15, 2011) ("While there is a judicial preference for arrests based on a finding of probable cause made by a judicial officer prior to the arrest there is no constitutional requirement that a warrant be obtained before an arrest can be made." (citing Gerstein v. Pugh, 420 U.S. 103 (1975))); Lee v. United States, 363 F.2d 469, 473 (8th Cir. 1966) ("An arrest warrant is not required even though there may be time to obtain one when the ensuing arrest is based upon probable cause."). Thus, this Court does not find the lack of a warrant dispositive and instead considers whether Defendants had probable cause to arrest Rockboy.

### b.    Probable Cause

Defendants argue that they had probable cause to arrest Rockboy without a warrant based on video evidence of him threatening Judge Anderson. Doc. 22 at 13. Although Rockboy does not dispute the existence of the video, he claims that Defendants lacked probable cause because the crime was not committed within the officers' presence and lacked probable cause that a

crime was committed in Charles Mix County or South Dakota and not in Indian country. Doc. 46 at 30.

### i.     Criminal Activity

In general, "[a] police officer may lawfully arrest an individual for a felony without a warrant if the officer has probable cause." Olinger v. Larson, 134 F.3d 1362, 1366 (8th Cir. 1998) (citations omitted). "Probable cause exists when the totality of the circumstances at the time of the arrest is sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Joseph, 712 F.3d at 1226 (citation modified); see also Klein v. Steinkamp, 44 F.4th 1111, 1115 (8th Cir. 2022) ("Probable cause exists under the Fourth Amendment when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable causation to believe that the suspect has committed or is committing a crime." (internal citation and quotation omitted)).

Under South Dakota law, "[a]ny person who, directly or indirectly, utters or addresses any threat or intimidation to any judicial or ministerial officer . . . for having performed any duty imposed upon the person by law, is guilty of a Class 5 felony." SDCL § 22-11-15. A duty imposed by law upon judicial officers is trying and determining criminal cases arising under South Dakota law. SDCL § 16-6-12. Rockboy's threat against Judge Anderson is somewhat incoherent, but it appears that at least in part, Rockboy threatened Judge Anderson because he sentenced him to prison in his prior criminal case. Doc. 23 ¶ 4. Deputy Rolston viewed the video on Rockboy's Facebook page and based on his interactions with Rockboy, identified that Rockboy was the subject of the video. Id. ¶ 3. Thus, Defendants had a reasonable belief that Rockboy committed a crime under SDCL § 22-11-15 for threatening a judicial officer.

## ii.    Within Officers' Presence

Rockboy claims that, even though Defendant Rolston watched the video of Rockboy threatening Judge Anderson, Defendants lacked probable cause because the crime was not committed within the officers' presence. Doc. 46 at 18, 24–25. Rockboy argues that the Supreme Court held that reasonableness for a warrantless arrest "depends on whether the arrest is supported by probable cause of a crime 'committed in the presence of the arresting officer.'" Id. at 25 (quoting Virginia v. Moore, 553 U.S. 164, 176 (2008)). In Moore, police officers arrested an individual in Virginia for driving with a suspended license, which was generally a non-arrestable misdemeanor. 533 U.S. at 166–67. The Supreme Court noted, "[i]n a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." Id. at 171 (citations omitted).

But as Defendants note, Doc. 54 at 7, the Supreme Court in United States v. Watson stated, "[t]he cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence as well as for a felony not committed in his presence if there was reasonable grounds for making the arrest." 423 U.S. 411, 418 (1976) (citations omitted). Further, in Maryland v. Pringle, the Supreme Court stated, "[a] warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if it is supported by probable cause." 540 U.S. 366, 370 (2003) (citing Watson, 423 U.S. at 424). Defendants also point out that the Eighth Circuit has also stated, "[a]rresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of

probable cause to justify a warrantless arrest." Doc. 54 at 7 (alteration in original) (quoting United States v. Britton, 101 F.4th 538, 542 (8th Cir. 2024)); see also Hall v. O'Clallaghan, No. 4:13CV3066, 2013 WL 12141247, at *4 (D. Neb. June 26, 2013) ("Probable cause does not require that a crime actually be committed in the arresting officer's presence.").

Here, Rockboy was arrested for a felony, SDCL § 22-11-15, not a misdemeanor, like the individual in Moore.[7] Thus, the fact that Deputy Rolston only saw a video of Rockboy's criminal activity and was not physically present does not make the arrest lack probable cause.

### iii.   In Charles Mix County

Rockboy's Amended Complaint alleges that Defendants lacked "probable cause that he committed a crime in Charles Mix County." Doc. 20 ¶ 34. Rockboy also distinguishes Hicks because "[i]n Hicks, the law enforcement activity concerned a state game warden who was investigating a crime that had occurred within his jurisdiction." Doc. 46 at 18. This Court does not read Hicks to make material the fact that the crime or arrest occurred in the particular arresting officer's jurisdiction. "[F]or Fourth Amendment purposes, the relevant question is whether an arrest was reasonable, not whether an arrest violated state law or whether an officer was acting within his geographical jurisdiction." Oglesby v. Lesan, 929 F.3d 526, 533–34 (8th Cir. 2019) (citing Moore, 553 U.S. at 178).

Rockboy argues that under SDCL § 7-12-1 the arrest was beyond Defendants' jurisdiction because the criminal conduct did not occur in Charles Mix County. Doc. 46 at 20. SDCL § 7-12-1 states in pertinent part, "[t]he sheriff shall keep and preserve the peace within the county." Defendants argue that "[a]s Rockboy admits in his brief, South Dakota law authorizes a

---

[7] Defendants also note that under South Dakota law, a felony arrest based on probable cause does not require that the crime be committed in the officer's presence, whereas a misdemeanor statute does impose the presence requirement, Doc 22 at 12–13 (citing SDCL § 23A-3-17, SDCL § 23A-3-16). But "state law [does] not alter the content of the Fourth Amendment." Moore, 553 U S at 172.

22

sheriff to 'keep and preserve the peace within the county,' which is precisely what the Officers, employees of the Charles Mix County Sheriff's office, did by arresting Rockboy in Charles Mix County." Doc. 54 at 9. Although Rockboy has clearly argued that Defendants' jurisdiction was limited to "preserving the peace" within Charles Mix County, he has not cited to any cases that held that "preserving the peace" limits jurisdiction of an arrest to the county where the crime was committed. Despite Rockboy's argument, this Court does not find it necessary to read into SDCL § 7-12-1 that sheriffs can only arrest an individual for criminal conduct in their specific jurisdiction, especially considering the South Dakota legislature contemplated situations of officers conducting arrests for felonies intrastate in SDCL § 23A-3-17. Even if SDCL § 7-12-1 did limit as such, "state law does not alter the content of the Fourth Amendment." Moore, 553 U.S. at 172. And this Court does not read the standard of probable cause to require that the criminal conduct need to have occurred in the jurisdiction of the arresting officer for the officer to have sufficient probable cause to conduct a warrantless felony arrest under the Fourth Amendment.

### iv.    Location of Recording

"When on-reservation conduct involving only Indians is at issue, state law is generally applicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest." Hicks, 533 at 362 (quoting White Mountain Apache Tribe. Bracker, 448 U.S. 136, 144 (1980)). Rockboy argues that Defendants do not "contend that they made any efforts to rule out the potentiality that the crime was committed in Indian country, which would also deprive them of jurisdiction under federal law."[8] Doc. 46 at 25. Based on this Court's own independent review, the Court finds the argument to

---

[8] This Court need not ultimately reach the issue of whether the State of South Dakota would have had jurisdiction to arrest Rockboy if he had made the threat in Indian country because those are not the facts of this case

be contrary to the facts. Although courts resolve genuine issues of material facts in favor of the non-moving party, a court does not adopt a fact that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Dimock v. City of Brooklyn Ctr., 124 F.4th 544, 548–49 (8th Cir. 2024) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)).

Rockboy states that "the video speaks for itself." Doc. 47 at 7. And in the video, Rockboy clearly stated at one point that he was in Yankton, South Dakota. Doc. 24-4 at 35:16–35:18. Around twenty minutes later, Rockboy began his threat against Judge Anderson. Id. at 58:02. There is no indication in the video that Rockboy left the state of South Dakota, and there certainly is no indication that Rockboy was in or around Lake Andes or an area of Indian country. See generally id. Deputy Rolston watched the video. Doc. 23 ¶ 4. Based on the Court's own independent review of the video, Defendants did not have any reason to suspect that Rockboy was not in South Dakota nor that he was in Lake Andes or Indian country at the time he threatened Judge Anderson. Further, it is undisputed that during the relevant time of the livestream, Rockboy was traveling between Yankton and Vermillion, not Lake Andes. Doc. 47 at 8. Thus, this Court does not find persuasive Rockboy's argument that Defendants lacked probable cause because they did not investigate whether he was in Indian county or was not in South Dakota before executing the arrest.

### v.    Authenticity of Video

Rockboy argues that "Defendant Rolston claims he reviewed an online video and observed Plaintiff in the video" but further investigative efforts were not "taken to identify the time and location of the video, to establish where the conduct may have occurred or to establish the videos reliability and authenticity, ensure Judge Anderson's safety, corroborate any 'true threats,' nor to seek a warrant." Doc. 46 at 26; see also id. at 4, 19, 29, 32. Although Rockboy

24

does not cite any authority, the most on-point authority that this Court found was <u>Ross</u>, 897 F.3d at 922–23.

In <u>Ross</u>, the Eighth Circuit held that officers were not entitled to qualified immunity on a Fourth Amendment illegal seizure claim for a warrantless arrest based on probable cause when minimal further investigation would have revealed the electronic statements made by an individual did not amount to a true threat. <u>Id.</u> Under a post explaining what different types of guns could be used for, the plaintiff commented, "Which one do I need to shoot up a kindergarten?" <u>Id.</u> at 918. Off-duty police officers were ultimately made aware of the plaintiff's comment. <u>Id.</u> at 919. When the officers arrived at work, the officers followed up with the comment and learned the plaintiff's place of employment. <u>Id.</u> Without further investigation, the plain-clothed officers went to the plaintiff's work and arrested him without asking any questions about the post. <u>Id.</u> The plaintiff was not further questioned until he arrived at the police station, and he was kept in custody for several days. <u>Id.</u> The Eighth Circuit held that the standard for probable cause "'is a reasonable ground for belief of guilt' under state law." <u>Id.</u> at 920 (citations omitted). Under the particular statute, only a true threat was a criminal offense. <u>Id.</u> at 921. Officers did not do any investigation into the context of the statement, the plaintiff's history of violence, or the plaintiff's beliefs about gun ownership and control. <u>Id.</u> at 922. Because officers arrested the plaintiff even though they "did not think the charges would stick," the Eighth Circuit held that a minimal further investigation would have revealed that the post was not a true threat and denied qualified immunity. <u>Id.</u> at 921–22.

Unlike the comment in <u>Ross</u>, Rockboy clearly articulated who he intended to kill, he would kill Judge Anderson if he got a hold of him, and he intended the action to be done at least in part because Judge Anderson had sentenced him to time in prison. Doc. 23 ¶ 4. During the

livestream, Rockboy seems to indicate that he previously has taken a life. Doc. 24-4 at 14:10–15:27. In the livestream, Rockboy stated that Sheriff Thaler had previously indicated that he felt threatened by Rockboy's language in a prior conversation. Doc. 24-4 at 16:46–17:07, 45:26–47:33. Deputy Rolston was also familiar with Rockboy based on prior interactions. Doc. 23 ¶ 3. It is readily apparent that Defendants were familiar with Rockboy's beliefs and past behaviors. Thus, Rockboy has not sufficiently alleged that a failure to investigate showed a lack of probable cause to arrest him.

Rockboy also argues that there is no evidence that Deputy Rolston was a computer expert or that prior to the arrest Deputy Rolston "undertook any efforts at the time to further the investigation by identifying where or when the video was made, consulting with any experts concerning the video, establishing that it was genuine and reliable, or by ruling out that the video may have been manipulated or created by artificial intelligence." Doc. 46 at 3. Rockboy does not cite any authority requiring a full-scale investigation before officers can arrest an individual for electronic threats, but based on this Court's own independent review, this Court does not find Rockboy's argument persuasive to show an insufficient investigation for the arrest to be based on probable cause. As Defendants note, "[a]rresting officers are not required to . . . have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest." Doc. 54 at 7 (first alteration in original) (quoting Britton, 101 F.4th at 542). This Court does not read the Fourth Amendment probable cause for a warrantless arrest case law to require at the time of the arrest a full-scale data analysis of a video containing what appears to be blatant evidence of criminal conduct when the subject is clearly identifiable.

c.    **Conclusion on Fourth Amendment Illegal Seizure Claim**

Thus, regardless of whether or not the land where Rockboy was arrested was Indian country, this Court finds that <u>Hicks</u> permitted an arrest in Indian country for the off-reservation state-law violation, the arrest was based on actual probable cause, and the arrest was not a violation of Rockboy's Fourth Amendment rights. Because the facts viewed most favorable to Rockboy do not demonstrate a deprivation of his Fourth Amendment right to be free from illegal seizure, Defendants Thaler, Rolston, and Budavich are entitled to summary judgment on this claim against them in their individual capacities for money damages.

2.    **Fourteenth Amendment Claims**

In Rockboy's Amended Complaint, he alleges "Defendants deprived Plaintiff of substantive and procedural due process under the Fourteenth Amendment of the United States Constitution." Doc. 20 ¶ 43. Rockboy's filing is not specific as to what facts go to his substantive and procedural due process claims. <u>See</u> <u>generally</u> <u>id.</u> In this Court's interpretation in relation to Rockboy's illegal seizure claim, the most correct reading of his Fourteenth Amendment claim is that his right to due process was violated when he was arrested by individuals supposedly lacking jurisdiction because he was located in what he alleges is Indian country and officers lacked a warrant or probable cause that he had committed a crime in Charles Mix County. <u>Id.</u> ¶¶ 31, 33–34, 36.

In Defendants' brief in support of their motion for summary judgment, Defendants state that "[a] claim that an officer was without jurisdiction to arrest is governed by the Fourth Amendment." Doc. 22 at 5. Although inelegantly articulated, this Court reads Defendants' brief as saying Rockboy's claim for seizure was to be properly governed by solely the Fourth Amendment. Rockboy noted in his response brief that "Defendants' Summary Judgment Motion

27

and Brief does not address Plaintiff's § 1983 claims for substantive and procedural due process violations under the Fourteenth Amendment to the United States Constitution." Doc. 46 at 33 n.8 (citing Doc. 20 ¶¶ 41–43). In their reply brief, Defendants stated, "the facts pleaded in Rockboy's Complaint are solely related to his assertions that his arrest was wrongful because the Officers lacked jurisdiction to arrest him and the force used to arrest him was excessive. These are Fourth Amendment claims, not due process claims." Doc. 54 at 12.

"As a general rule," courts "will not consider arguments raised for the first time in a reply brief." Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006) (citing Akeyo v. O'Hanlon, 75 F.3d 370, 374 n.2 (8th Cir. 1996)). But courts "are not precluded from doing so . . . where . . . the argument raised in the reply brief supplements an argument raised in a party's initial brief." Id.; see also J.W. by & through Williams v. Cigna Health & Life Ins. Co., No. 4:21-cv-00324-SRC, 2022 WL 1185196, at *2 (E.D. Mo. Apr. 21, 2022) ("Courts generally do not review arguments first raised in a reply brief because the other party has not had adequate opportunity to respond to such arguments." (quoting Bayes v. Biomet, Inc., No. 4:13-cv-800, 2021 WL 3330911, at *8 (E.D. Mo. Aug. 2, 2021))). On July 10, 2025, this Court held oral argument, during which the parties had a full and fair opportunity to address any issues and arguments raised in this case. Mot. Hr'g 09:26:37–09:26:50, July 10, 2025 (audio). Between the hearing and the inelegant articulation of their argument in Defendants' initial brief, this Court does not find that Rockboy is prejudiced by consideration of the arguments that Rockboy's claims for due process are not actionable.

Eighth Circuit precedent is slightly unclear whether a cause of action for an allegedly illegal arrest exists under the Fourteenth Amendment Due Process Clause. The Eighth Circuit has noted that "[i]t is well established that a warrantless arrest without probable cause violates an

individual's constitutional rights under the Fourth and Fourteenth Amendments." Hannah v. City of Overland, 795 F.2d 1385, 1389 (8th Cir. 1986) (citing Sartin v. Comm'r of Pub. Safety, 535 F.2d 430, 434 (8th Cir. 1976)). It is not expressly clear whether the court meant that a claim was actionable under the Fourth Amendment as applicable to the states through the Fourteenth Amendment or that a separate due process cause of action exists under the Fourteenth Amendment for an illegal arrest. But later the Eighth Circuit stated that "a § 1983 plaintiff's claim that he was arrested or prosecuted without probable cause, even if labeled a claim of malicious prosecution, 'must be judged' under the Fourth Amendment, not substantive due process." Stewart v. Wagner, 836 F.3d 978, 983 (8th Cir. 2016) (citation omitted).

Regardless of whether a cause of action is available under the Fourteenth Amendment for an arrest lacking probable cause, this Court already determined that Defendants had probable cause to arrest Rockboy. See supra at 27. The issue of probable cause has already been fully briefed, and thus, the parties would not be prejudiced by this Court's decision on his Fourteenth Amendment due process claim based on a lack of probable cause.

> Rule 56(f) provides that the court may grant summary judgment on grounds not raised or on its own "[a]fter giving notice and a reasonable time to respond." Even without notice, however, summary judgment may be granted "on an issue not properly raised in the summary judgment motion if the district court's findings on properly addressed issues foreclose the unraised issue." Heisler v. Metro. Council, 339 F.3d 622, 632 (8th Cir. 2003), citing Interco Inc. v. Nat'l Sur. Corp., 900 F.2d 1264, 1269 (8th Cir. 1990).

Rains v. Jones, 905 F.3d 545, 551–52 (8th Cir. 2018) (alteration in original). Because even if a Fourteenth Amendment claim exists for an illegal arrest based on a lack of probable cause, the existence of probable cause forecloses Rockboy's Fourteenth Amendment claim for an illegal arrest. Further, "[t]o breach the shield of qualified immunity by establishing a 'violation of a substantive due process rights by an . . . official, a plaintiff must show (1) that the official

violated one or more fundamental constitutional rights, and (2) that the conduct of the . . . official

was shocking to the 'contemporary conscience.'" Winslow v. Smith, 696 F.3d 716, 731 (8th Cir.

2012) (quoting Flowers v. City of Minneapolis, 478 F.3d 868, 873 (8th Cir. 2007)).  Rockboy

has not shown that his arrest violated a constitutional right.  Thus, this Court grants Defendants

summary judgment on Rockboy's Fourteenth Amendment claim for illegal arrest.

### D.    Claims for Excessive Force

As to Rockboy's individual capacity claims for illegal seizure, he sues Sheriff Thaler and

Deputies Rolston and Budavich for violating his Fourth Amendment right to be free from

excessive force and his Fourteenth Amendment right to substantive and procedural due process.

Doc. 20 ¶¶ 43–44.  Defendants move for summary judgment based on qualified immunity.  Doc.

22 at 20–23.

#### 1.    Fourth Amendment Claims

Defendants move for summary judgment on the Fourth Amendment excessive force

claims because "the officers used an objectively reasonable amount of force to effectuate

Rockboy's arrest" and "[t]he Officers are entitled to qualified immunity because the facts do not

show a Fourth Amendment violation."  Id. at 23.  Rockboy argues that Defendants are not

entitled to summary judgment on the Fourth Amendment excessive force claim because the

arrest was illegal and the force used was excessive considering the circumstances of the stop.

Doc. 46 at 30.

A seizure of an individual may become unreasonable when an officer uses excessive

force.  Watkins v. City of St. Louis, 102 F.4th 947, 951–52 (8th Cir. 2024) (citations omitted).

"[T]he question whether force used was objectively reasonable or constitutionally excessive is a

question of law, at the summary judgment stage and after trial."  Westwater v. Church, 60 F.4th

1124, 1129 n.1. (8th Cir. 2023) (emphasis omitted).  Courts "evaluate the reasonableness of the

force by balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment

interests against the countervailing governmental interests at stake.'"  Baude v. Leyshock, 23

F.4th 1065, 1073 (8th Cir. 2022) (quoting White v. Jackson, 865 F.3d 1064, 1074 (8th Cir.

2017)).  The reasonableness "depends on the particular facts and circumstances, including 'the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by

flight.'"  Carpenter v. Gage, 686 F.3d 644, 649 (8th Cir. 2012) (quoting Graham v. Connor, 490

U.S. 386, 396 (1989)).

Officers are "entitled to use the force necessary to effect the arrest" when the individual

"at least appeared to be resisting."  Ehlers v. City of Rapid City, 846 F.3d 1002, 1011 (8th Cir.

2017).  But "prior to using force officers must allow a reasonable opportunity to comply with

their commands."  McReynolds v. Schmidli, 4 F.4th 648, 653 (8th Cir. 2021).  See also Kohorst

v. Smith, 968 F.3d 871, 876 (8th Cir. 2020) ("We have upheld the use of force where a suspect is

non-compliant and resists arrest or ignores commands from law enforcement.").  Several courts

have recognized that breaking a car window does not violate the Fourth Amendment when an

individual refuses officers' orders to vacate the car.  See Dunn v. Manicki, No. 17-cv-00656,

2021 WL 1208990, at *7 (N.D. Ill. Mar. 31, 2021) (holding that officers acted reasonably in

breaking rear passenger car window after twenty minutes of ordering driver to lower the

window); Holcomb v. Dart, No. 18-cv-608-bbc, 2019 WL 2603093, at *2 (W.D. Wis. June 25,

2019) (holding that officers did not use excessive force when breaking car window after driver

refused repeated requests to exit the vehicle); Woods v. Az. Dep't of Pub. Safety, No. CV-13-

00746-PHX-JJT, 2016 WL 537584, at *3 (granting qualified immunity on an excessive force

claim when officers used baton to break car window of individual resisting arrest, when one baton strike inadvertently hit plaintiff). The Eighth Circuit has also held an officer's use of force in pulling the plaintiff from a car and handcuffing him was reasonable when the plaintiff attempted to roll up the car window, tried to lock the door, refused to get out of the car, and clung to the door frame. Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1078, 1082 (8th Cir. 1990). The court in Brown v. Haupert also held that two law enforcement officers were entitled to qualified immunity on an excessive force claim when they used force to pull a non-compliant arrestee from a vehicle. 3:21-CV-03019-RAL, 2023 WL 2586057, at *9 (D.S.D. Mar. 21, 2023).

Here, Defendants argue that "the facts do not show a Fourth Amendment violation" for use of excessive force because Defendants "only resorted to the use of force necessary to effect arrest after Rockboy repeatedly refused to comply with commands" and because "[t]he use of force ended immediately after Rockboy was handcuffed." Doc. 22 at 23. It is undisputed that Sheriff Thaler spoke with Rockboy for over fifteen minutes and attempted multiple times to have Rockboy comply with his request to unlock the car door, exit the driver's seat of the vehicle, and effect the arrest without a use of force. Doc. 23 ¶¶ 30–32. Rockboy did not comply with Defendants' requests. Officers also called an ambulance at Rockboy's request. Id. ¶ 38. Officers asked if Rockboy wanted the handcuffs removed or to be repositioned while they waited for the ambulance. Id. ¶ 39. Rockboy does not dispute any of these facts nor cite to any case law to show why such use of force would be considered excessive.[9] Doc. 46 at 29–30.

---

[9] Rockboy notes in his briefing that during the interaction with Defendants he did not violate traffic laws, did not brandish a weapon, did not make threats to the officers, and did not become violent. Doc. 46 at 30. He argues that the use of force is excessive when considering the behaviors he *did not* engage in, but he does not argue how the use of force was excessive when considering the behaviors he *did* engage in, i.e., threatening a judge, continuing to drive away when officers pursued him, and refusing to open the door and get out of his truck after being asked to by officers for over fifteen minutes and being notified that he was under arrest. Id. at 29–30; Doc. 23 ¶ 32.

Instead, Rockboy counters that "Defendants lacked a warrant, lacked probable cause that any underlying criminal activity occurred in Charles Mix County, the State of South Dakota, or that it did not occur in Indian country, exceeded their jurisdiction, and ignored procedural requirements for the valid enforcement of criminal process." Doc. 46 at 30. He further states, "[t]he cases relied on by Defendants with respect to excessive force involve *lawful arrests* based on *probable cause of criminal activity within the presence of the arresting officer*." Id. at 29 & n.7 (specifically referencing Brown and Foster in footnote). But Rockboy does not cite to any case law requiring probable cause "within the presence of the arresting officer" to defeat an excessive force claim. Id. at 29–30 (emphasis omitted). Such a view "mistakenly conflates distinct Fourth Amendment claims." County of Los Angeles v. Mendez, 581 U.S. 420, 428 (2017) ("[T]he objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional. An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry."). The Eighth Circuit has also stated that "we are inclined to believe that the presence of actual or arguable probable cause is irrelevant to the objective reasonableness of the force used to effect an arrest." Habiger v. City of Fargo, 80 F.3d 289, 298 n.8 (8th Cir. 1996). Defendants note that "Rockboy continues to argue probable cause in [the excessive force] context, but at issue is not probable cause, but the amount of force used to make the arrest."[10] Doc. 54 at 11.

---

[10] Even if probable cause and the officer's jurisdictional authority were relevant for the consideration of excessive force, this Court has already found that Defendants had probable cause and could arrest Rockboy at the particular location based on off-reservation criminal activity. See supra at 27. Further, considering the circumstances and knowledge of the officers at the time of the arrest—that Rockboy had threatened to kill a judge and that a tribal officer confirmed Defendants' belief that the location of the arrest was state land—Defendants' belief that they could arrest Rockboy at the particular location and in the particular manner was reasonable

The force used by Defendants was objectively reasonable in light of Rockboy's repeated resistance and refusal to comply with Defendants' orders. Further, Rockboy has not cited any cases showing that Defendants violated a clearly established statutory or constitutional right. See Doc. 46 at 29–30. Thus, Defendants are entitled to qualified immunity on Rockboy's Fourth Amendment excessive force claims. Therefore, this Court grants Defendants' motion for summary judgment in favor of Defendants Thaler, Rolston, and Budavich on the Fourth Amendment excessive force claims against them in their individual capacities for money damages.

### 2.     Fourteenth Amendment Claims

In Rockboy's Amended Complaint, he alleges that "Defendants deprived Plaintiff of substantive and procedural due process under the Fourteenth Amendment of the United States Constitution." Doc. 20 ¶ 43. As this Court previously noted, Rockboy's Amended Complaint is not specific to what facts go to his due process claims, see supra at 27, but it seems in relation to his excessive force claim in this Court's opinion, the most correct reading of Rockboy's Fourteenth Amendment claims is that his right to due process was violated when Defendants supposedly used excessive force.

Defendants argued in their brief in support of their summary judgment motion that "[t]he Fourth Amendment governs Rockboy's excessive-force claim." Doc. 22 at 20. Although inelegantly articulated, this Court reads Defendants' brief as saying Rockboy's claim for excessive force was to be properly governed by solely the Fourth Amendment. Rockboy notes in his response, "Defendants' Summary Judgment Motion and Brief does not address Plaintiff's § 1983 claims for substantive and procedural violations under the Fourteenth Amendment to the United States Constitution." Doc. 46 at 33 n.8. But in the reply brief Defendants argue, "the

facts pleaded in Rockboy's Complaint are solely related to his assertions that his arrest was wrongful because the Officers lacked jurisdiction to arrest him and the force used to arrest him was excessive. These are Fourth Amendment claims, not due process claims." Doc. 54 at 12. Defendants argue that Rockboy's claims are properly considered under the Fourth Amendment, not the Fourteenth Amendment, because "[t]he Supreme Court held long ago that claims involving the use of excessive force in the context of an arrest or an investigatory stop must be analyzed under the protections of the Fourth Amendment." Id.

Because arguments raised in a reply brief that supplement an argument raised in the initial brief can be considered, Barham, 441 F.3d at 584, and because this Court held a hearing in which the parties had a full and fair opportunity to address any issues and arguments before this Court, it does not find that Rockboy is prejudiced by consideration of the arguments that Rockboy's claim for excessive force falls squarely under the Fourth Amendment.

The Eighth Circuit has held that "the Fourteenth Amendment does not apply to excessive force claims involving arrests, which are appropriately reviewed under a Fourth Amendment analysis." Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019) (citation omitted). The Supreme Court has also held that "*all* claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham, 490 U.S. at 395. Thus, this Court finds that Rockboy's claims for excessive force properly arose under the Fourth Amendment, and Defendants are entitled to summary judgment on the Fourteenth Amendment claim for excessive force.[11]

---

[11] If Rockboy intended for his substantive and procedural due process claims to encompass other conduct beyond the claims for excessive force and wrongful arrest, such conduct was not sufficiently pleaded for this Court to identify

E.    **Monell Claims**

Rockboy sues Charles Mix County and alleges claims against Defendants Thaler,

Rolston, and Budavich in their official capacities.  Doc. 20 at 1.  Suits against sheriffs and deputy

sheriffs in their official capacities "must be treated as a suit against the County."  Brewington v.

Keener, 902 F.3d 796, 800 (8th Cir. 2018) (quoting Liebe v. Norton, 157 F.3d 574, 578 (8th Cir.

1998)); Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a

government officer in his [or her] official capacity is functionally equivalent to a suit against the

employing governmental entity.").  Thus, Rockboy's official capacity claims against Sheriff

Thaler and Deputies Rolston and Budavich are treated as claims against Charles Mix County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its

employees or agents."  Monell, 436 U.S. at 694; see also id. at 691 (holding that local

government entities are not liable for acts of its employees under the theory of respondent

superior).  "To establish [governmental] liability under § 1983, a plaintiff must show that a

constitutional violation was committed pursuant to an official custom, policy, or practice of the

governmental entity."  Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009) (citing Monell, 436

U.S. at 690–92); see also Watkins, 102 F.4th at 953 ("Specifically, § 1983 liability for a

constitutional violation may attach to a municipality if the violation resulted from (1) an official

municipal policy, . . . (2) an unofficial custom, . . . or (3) a deliberately indifferent failure to train

or supervise." (citation modified)).

For Rockboy's excessive force claims, he does not appear to allege any policy or

unofficial custom that caused the alleged deprivation of his rights.  Defendants argue "Rockboy

pleads no facts identifying any official policy adopted by Charles Mix County's decision-making

---

any further claims.  See Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain   . . a short and plain statement of the claim showing that the pleader is entitled to relief.")

officials, no example of alleged unconstitutional misconduct outside of his own case, and no

facts about training for Charles Mix County officials that allegedly caused the deprivations he

alleges." Doc. 22 at 26. Rockboy does not cite, and this Court is not aware of, any information

in the record indicating that Charles Mix County had an official policy or unofficial custom that

caused a use of excessive force or that excessive force was used based on inadequate training. In

Rockboy's brief, he argues that when responding to his discovery requests, "Defendants have

failed to identify or produce any training requirements, materials, policies, or procedures utilized

for law enforcement." Doc. 46 at 31. Defendants objected to several of Rockboy's discovery

requests as disproportional to the needs of the case, but Rockboy did not file any motions

seeking Court intervention in a discovery dispute. Doc. 54 at 13; Docs. 38-2, 38-3. As

Defendants correctly point out, the correct method for disputing discovery requests is a motion to

compel, not a request that the Court infer that the objections to discovery show "Defendant

Charles Mix County does not genuinely dispute maintaining a policy, practice, or custom of

arresting Indians on Indian lands in Lake Andes." Doc. 46 at 31 (citation modified); Doc. 54 at

13–14. Thus, this Court finds that Rockboy has not shown that he was subjected to excessive

force based on an official policy, an unofficial custom, or a deliberately indifferent failure to

train or supervise. Therefore, this Court grants Defendants summary judgment on Rockboy's

excessive force claims against Defendants Thaler, Rolston, and Budavich in their official

capacities and Charles Mix County.

The Court next turns to Rockboy's illegal seizure claims. Defendants argue that

"Rockboy's claim against Charles Mix County fails because he cannot show an underlying

constitutional or statutory violation." Doc. 22 at 24. "[A] Monell claim requires an underlying

constitutional violation." Mitchell, 28 F.4th at 902; see also City of Los Angeles v. Heller, 475

37

U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the

individual [employee], the fact that the departmental regulations might have *authorized* the use

of [the conduct] is quite beside the point."); White, 865 F.3d at 1075 ("Municipal liability will

not attach unless individual liability is found on an underlying substantive claim." (internal

quotation omitted)). Here, this Court found that Rockboy's arrest did not violate his

constitutional rights because even if the arrest occurred in Indian country, Defendants could

arrest Rockboy, and the arrest was based on probable cause. Thus, because there has been no

underlying constitutional violation, Rockboy cannot succeed on his claims against Charles Mix

County regardless of if it had an unconstitutional policy or custom. Therefore, Defendants are

entitled to summary judgment on Rockboy's claims against Charles Mix County and official

capacity claims against Defendants Thaler, Rolston, and Budavich.

### F.    Rockboy's Motion for Summary Judgment

Rockboy moves for

> partial summary judgment on his claims for declaratory relief for judgment
> declaring that the land upon which Plaintiff was arrested by Defendants qualifies
> as "Indian country" and falls within the jurisdiction of the Yankton Sioux Tribe and
> the U.S. government and that Charles Mix County has no jurisdiction to arrest
> Yankton Sioux Tribal members on such lands.

Doc. 33 at 1. All of Rockboy's federal claims have either been dismissed or granted summary

judgment, and a request for declaratory relief is not a standalone claim. Rockboy does not cite to

the Declaratory Judgment Act (28 U.S.C. § 2201) in his Amended Complaint, but even if this

Court were to view his request for declaratory relief under § 2201, he would not have an

independent claim. See Anderson v. Sullivan, 959 F.2d 690, 692 n.4 (8th Cir. 1992) (Section

2201 "presupposes an independent form of jurisdiction . . . [and] does not expand the jurisdiction

of the federal courts" (internal citations omitted)); Sprint Commc'ns Co. L.P. v. Crow Creek

Sioux Tribal Ct., 4:10-CV-04110-KES, 2015 WL 12670415, at *5 (D.S.D. June 2, 2015) ("A declaratory judgment is itself a remedy, not a cause of action." (citations omitted)).  Because this Court found that it lacks standing over some of his claims and that Defendants are entitled to summary judgment on the rest of his federal claims, this Court does not find that Rockboy is entitled to summary judgment.  Thus, Rockboy's motion for partial summary judgment, Doc. 33, is denied.

### G.    State-Law Claims

Rockboy alleges negligence claims arising under South Dakota law.  Doc. 20 ¶¶ 50–56. Because Rockboy's § 1983 claims have been dismissed on standing or Defendants have been granted summary judgment, this Court has dismissed all claims over which it had original jurisdiction.  This Court does not have original jurisdiction over Rockboy's state-law claims. Because the claims arise under state law, this Court does not have federal question jurisdiction. Doc. 20 ¶¶ 49–56.  See also 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Rockboy has not pleaded diversity of citizenship.  28 U.S.C. § 1332.  Rockboy has also not shown complete diversity for diversity of citizenship: he is a resident of Lake Andes, South Dakota, and he sues Charles Mix County, South Dakota.  Doc. 20 ¶¶ 1–4.  See also OnePoint Sols., LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (citation omitted); Schantz v. White Lightning, 502 F.2d 67, 68 (8th Cir. 1974) (demonstrating that even if Rockboy's home in Lake Andes, South Dakota, is in Indian country, he is a citizen of South Dakota for diversity purposes).  Nor has he shown that his damages exceed $75,000.  See generally Doc. 20.

Generally, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that the form part of the same case

or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A court

may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims

over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Defendants argue that the Court

should decline supplemental jurisdiction because "there are no considerations of judicial

economy, convenience, fairness, or comity that favor exercising supplemental jurisdiction over

Rockboy's state-law negligence claim." Doc. 22 at 27. Rockboy merely argues that "[t]he Court

should deny Defendants' Motion for Summary Judgment and maintain its continuing jurisdiction

over the parties and subject matter herein." Doc. 46 at 33. Because this Court found that

summary judgment was appropriate, all his federal claims are no longer pending, and Rockboy

has not alleged any rationale as to why this Court should retain jurisdiction over his state-law

claims, this Court finds that declining to exercise supplemental jurisdiction is proper. Thus, this

Court declines to exercise supplemental jurisdiction over Rockboy's state-law claims, and his

state-law claims are dismissed without prejudice.

## V.      Motion for Judicial Notice

Rockboy "moves the Court to take judicial notice of the publicly available records and

documents attached to the Affidavit of Tucker Volesky," who represented Rockboy. Doc. 37 at

1. Defendants oppose Rockboy's motion with respect to several exhibits because it "exceeds the

limits of Fed. R. Evid. 201 and improperly seeks to introduce documents in support of his motion

for summary judgment without regard to the authenticity and hearsay requirements of the

Federal Rules of Evidence." Doc. 40 at 1–2. During Oral Argument, Rockboy's counsel

informed the Court that the documents for which he asks the Court to take judicial notice were

put forth to show the land where Rockboy was arrested was Indian country and noted that if the

Court finds that the land is not Indian country then the documents are "behind us" and no longer

relevant. Mot. Hr'g 09:08:40–09:09:44, July 10, 2025 (audio). "[A] court may properly decline to take judicial notice of documents that are irrelevant to the resolution of a case." Cravens v. Smith, 610 F.3d 1019, 1029 (8th Cir. 2010). Because this Court need not determine the status of the land to determine the issues of this case, Rockboy's motion for judicial notice, Doc. 37, is denied.

## VI.   Conclusion

Accordingly, it is

ORDERED that Rockboy's Amended Complaint, Doc. 20, is dismissed. It is further

ORDERED that Rockboy's claims for prospective injunctive and declaratory relief are dismissed without prejudice for lack of standing. It is further

ORDERED that Defendants' motion for summary judgment, Doc. 21, is granted as to Plaintiff's claims for money damages pursuant to 42 U.S.C. § 1983, and these claims are dismissed with prejudice. It is further

ORDERED that Rockboy's motion for summary judgment, Doc. 33, is denied. It is further

ORDERED that this Court declines to exercise supplemental jurisdiction over Rockboy's state-law claims, and his state-law claims are dismissed without prejudice. It is finally

ORDERED that Rockboy's motion for judicial notice, Doc. 37, is denied.

DATED this ___ day of February, 2026.

BY THE COURT:

ERIC C. SCHULTE
United States District Judge